EXHIBIT "B"

**Southworth-Milton, Inc.** CAT

100 Quarry Drive, Milford, MA 01757, (508) 634-3400, Fax: (508) 634-5586
90 Harts Lane, Albany, NY 12204, (518) 465-5255, Fax: (518) 465-6742
P.O. Box 206, Concord, NH 03302-0206, (603) 746-4611, Fax: (603) 746-8704
79 Robertson Boulevard, Brewer, ME 04412, (207) 989-1890, Fax: (207) 989-1770
16 Pleasant Hill Road, Scarborough, ME 04074, (207) 883-9586, Fax: (207) 883-8547
1 Cat Lane, Richmond, VT 05477, (802) 434-4228, Fax: (802) 434-4616

# RENTAL AGREEMENT

Start Date: 5/30/03

NAME OF LESSEE Mahoney Const. Corp. LESSEE'S P.O.#

ADDRESS 1 Tanglewood LA. TELEPHONE (401) 265-4992

CITY No. Prov. COUNTY STATE RI ZIP CODE 02904

Southworth-Milton, Inc., hereinafter called the Lessor, agrees to lease to the Lessee for use at:
the equipment and/or generator described below upon the terms and conditions hereinafter stated.

**DESCRIPTION OF EQUIPMENT:**
1 CAT 345 HEX w/ Largest Bucket Available

S/N 5CW219R 1AGS1481

The agreed total value of the equipment is set at $ ("Total Value") for the purpose of determining lessee's obligations for reimbursement of lessor in the event of loss, damage or destruction of the equipment.

The rent for the equipment herein leased shall be $ 11,000 — per MO - (day, week, month) exclusive of sales and/or use tax, insurance costs, maintenance costs and other costs, expenses and charges of Lessee specified below, in advance, for a term of month, week, day. The lease term shall commence on date of delivery to the Lessee. Except as otherwise provided herein, rent shall continue to accrue until the latter to occur of (a) the date said equipment is returned to Lessor's place of business, and (b) the expiration of the term of this agreement. If Lessee purchases said equipment, this lease shall be deemed to have been terminated and rent shall cease to accrue on the date of such purchase. Rent payments shall be made by Lessee at Lessor's place of business and shall continue on the same day of each month for the term hereof.

The Lessee agrees not to use the equipment more than eight (8) hours in any one day nor more than five (5) eight (8) hour days in any one week nor more than twenty (20) eight (8) hour days in any one thirty (30) consecutive day period, unless Lessee agrees to pay additional compensation for overtime to Lessor.

ADDITIONAL TERMS Monthly Rental

| | |
|---|---|
| Insurance | $ Cust. |
| Sales Tax | $ 770. — |
| Total Rental Rate | $ 11,770. — |
| Freight | $ |

All transportation charges from point of delivery to destination and return charges to the point of delivery are to be paid by the Lessee.

The Lessor reserves the right to assign its interest in this agreement without Lessee's consent and the Lessee agrees that such assignee may succeed to and be entitled to exercise all of the rights of the Lessor. Such assignee's rights shall be free from all defenses, offsets, setoffs, recoupments, or counter claims which Lessee may be entitled to assert against Lessor. No such assignee shall be obligated to perform any duty, covenant or condition required to be performed by Lessor under the terms of this agreement.

The Lessor is not the manufacturer of the equipment nor the agent of said manufacturer. The Lessor makes no warranties either express or implied, including without limitation any warranty of merchantability or fitness for any particular purpose, with respect to the equipment unless endorsed herein in writing. Lessor does not undertake any responsibility with respect to the ordering, manufacturing, purchase, delivery, assembly, installation, testing, operation or servicing of the equipment. If, in the good faith opinion of Lessor, there should be any material discrepancy between the equipment as described herein and the equipment as delivered or the equipment should fail to comply with any warranty endorsed herein, then Lessor shall at its option within 30 days after the Lessee gives written notice of such discrepancy or noncompliance (a) correct such discrepancy or noncompliance either on site or at Lessor's place of business, (b) replace the equipment, or (c) terminate this lease. Lessor shall have no obligation hereunder unless such discrepancy or noncompliance is of a type which reasonable inspection and testing by the Lessee would not have revealed within three days of Lessee's receipt of the equipment, nor unless Lessee shall have given Lessor written notice of such discrepancy or noncompliance within ten (10) days after discovery thereof. In case of termination of this lease by the Lessor as a result of such discrepancy or noncompliance, Lessee shall be liable for rent through the date of termination together with transportation charges for the return of said equipment to Lessor's place of business from which the equipment was delivered. In no event shall Lessor be liable to Lessee, nor shall Lessee have any right of set-off or recoupment, for any loss, damage, or expense (including, without limitation, any incidental or consequential damages) of any kind caused or related to the use, inability to use, or attempted use of said equipment or any failure, defect or noncompliance in or with the equipment or any replacement parts, or any action or inaction or performance or nonperformance by the Lessor hereof or in connection with the transaction contemplated hereby. The foregoing exclusion of liability shall apply regardless of whether such liability is asserted to arise from breach of contract, negligence, strict products liability, or other tort or breach of legal duty.

The receipt and acceptance by the Lessee of said equipment shall constitute acknowledgment that said property has been accepted, that said property has been examined, operated under ordinary working conditions, and found in good condition and repair and fit for use unless the Lessee makes claim to the contrary to the Lessor by registered mail with return receipt requested within three days after receipt of said equipment.

This agreement is subject to the terms and conditions of the reverse side hereof, including but not limited to the applicable warranties herein. The front and reverse side together constitute the entire agreement between the parties. The Lessor's obligation to perform under this agreement is conditioned on the Lessee's compliance with the terms hereof.

Except as provided above, this agreement cannot be cancelled or terminated by Lessee. Lessee hereby agrees that its obligation to pay all rent and other amounts payable hereunder and to perform all of its duties with respect hereto shall be absolute and unconditional under any and all circumstances and that it shall so pay and perform without abatement or reduction for any reason, including without limitation any actual or alleged present or future claim or right of setoff or recoupment that the Lessee may have against the Lessor or against the supplier, manufacturer or dealer of the equipment.

Lessee agrees that the obligations undertaken herein by Lessee are for the purpose of furthering Lessee's income-producing business or activity.

We clearly understand this agreement and have read and agree to be bound by the conditions stated on the front and back of this agreement.

Lessee hereby acknowledges that Lessor has offered to him for rent Safety Equipment or devices which attach to the equipment and Lessee hereby release and discharges Lessor from any liabilities which Lessee might hereafter claim against Lessor by reason of Lessor's failure to advise Lessee of the availability of safety equipment or devices.

LESSEE INITIALS [initials]

Lessee shall provide full insurance coverage as provided in 8(a). If evidence of such insurance is not provided by the Lessee within 10 days of this agreement, the Lessor will provide all-risk physical damage coverage for loss or damage that may occur during the term, and in the amount equal to the Total Value. Cost of said coverage will be paid by the Lessee who will be responsible for the deductible up to $5,000.00 per item per claim.

LESSEE INITIALS [initials]

LESSEE [signature]

(Individual, Company, Corporation, Partnership)

Signature
(Authorized Representative, Title)

SOUTHWORTH-MILTON, INC.
LESSOR

By [signature] (Sales Representative) 627

Approved by: [signature] (Authorized Representative)

Date: 5/30/03

**This lease agreement is for immediate acceptance by the Lessee, but although so accepted does not constitute a contract until same is approved by an authorized representative of the Lessor and is subject to change or withdrawal until so approved.**

1. The Lessee agrees at its own cost and expense to keep said equipment in good working condition and repair during the term of this agreement and to return it to the Lessor in as good condition as received, normal wear and tear in the hands of a competent operator excepted. Lessor to be the sole judge in determining normal wear and tear and Lessee further agrees to supply a competent operator to operate said equipment if, in Lessor's opinion, it is being damaged in excess of ordinary wear and tear. For purposes of this agreement a competent operator is one who may reasonably be expected to operate the equipment leased hereunder without causing damage to said equipment and without inflicting physical injury to himself or any other person because of his inability, inexperience or negligence. Lessee shall not make any material alterations to the equipment without the prior written consent of Lessor.
2. From the time the equipment is delivered to Lessee until it is returned to Lessor, Lessee shall use and preserve the equipment in a careful, proper and lawful manner and shall be responsible for any loss or damage thereto from any cause whatsoever. Lessee agrees that all equipment, parts, additions, attachments, accessories and repairs at any time made to or placed upon the equipment shall become the property of Lessor.
3. The Lessee agrees to exercise reasonable care of the tires on this equipment. The expense of repairing cuts and breaks in a tread or sidewall of any of said tires, or replacement when a tire is damaged beyond repair, will be borne by the Lessee. It is agreed that if the parties hereto cannot agree to the necessity for such repairs or replacements, the parties hereto will be bound by the decision of a representative of a nationally recognized tire manufacturer. Tires shall be in a recappable or better condition at the completion of the rental period. Should tires require recapping before the termination of the rental period as a result of normal usage, the Lessor will remove, recap and remount tires at no cost to Lessee. Should the tire or tires require replacement as a result of negligence or accident by Lessee, the cost of replacement shall be borne by Lessee. At the termination of the rental period the Lessor as a result of loss hours of use on the replaced tire or tires shall credit the Lessee for the added percentage of tread remaining. Should Lessee elect to purchase equipment, the replacement or recapping costs paid the Lessor shall be added to the purchase price of the equipment.
4. Lessee agrees to keep said equipment and Lessee's interest under this Agreement free and clear of all liens and encumbrances and further agrees not to sublease said generator and equipment or offer it for hire. Lessee shall at its own cost and expense protect and defend Lessor's title to the interest in the equipment against the claims and demands of all persons claiming by, through or under Lessee. Lessee shall not remove said equipment from the State where equipment was delivered without the written consent of the Lessor. Lessee shall immediately notify Lessor if the equipment is moved from the location listed above. Lessee will keep the equipment at the address specified above and not remove all or any part of the equipment therefrom without Lessor's prior written consent. Lessee shall not sell, transfer, assign, sublet or use as security or collateral any of the equipment leased hereunder, or any interest in this lease, any attempt to do so shall constitute an event of default hereunder and such attempted assignment, sublease or use as security or collateral shall be void and without effect. Lessee shall, if at any time requested to do so by the Lessor, affix in a prominent position, plates, tags or other identifying labels showing ownership of the equipment by Lessor.
5. The equipment shall at all times remain personal property of Lessor regardless of the degree of its annexation to real property. The equipment shall not by reason of any annexation to personal property become a part thereof.
6. Lessee agrees the Lessor shall not be liable, whether for breach of contract, negligence, strict liability or other tort or breach of duty. Lessee agrees the Lessor shall not be liable for any property damage or for any personal injury, including death, sustained or suffered by any person, firm, entity or corporation in connection with the operation or installation of said equipment, nor for any loss, delay or damage resulting from defects in, accidental breakage of, or inefficiency of said equipment. Lessee agrees to assume all risk and liability for, and agrees to indemnify, save and hold Lessor harmless from all claims and liens, all loss of or damage to the equipment and all loss, damage, claims, penalties, liability and expenses, including attorney's fees, howsoever arising from or incurred because of the use, operation or storage of said equipment.
7. The Lessee shall during the term of this agreement pay any and all taxes, assessments or other charges levied upon said equipment and any sales, use or other tax which may be imposed by state law on this transaction, and shall comply with all laws relating to the operation of said equipment at his own expense. Should the Lessor at its option, make any payment on behalf of the Lessee or incur any expense attributable to or payable by the Lessee. Lessee shall reimburse Lessor therefore on demand. Lessee shall not incur for Lessor's account or liability any expense whatsoever without Lessor's prior written consent.
8. Lessee shall provide full insurance coverage: (a) to cover damage occasioned by all risks of direct physical loss or damage that may occur during the term and in amount equal to the Total Value: and (b) to protect Lessor with public liability insurance with limits of at least $500,000 per person and $1,000,000 for each occurrence unless larger limits are required by Lessor, which Lessee will satisfy upon being advised of the amount thereof. Further, Lessee shall at all times supply Lessor with certificates of insurance which shall be issued by companies satisfactory to Lessor, name Lessor as an additional insured as respects this lease and prohibit cancellation or amendment until after thirty days prior notice shall first have been given to Lessor.
9. Lessee agrees if any one or more of the following events of default shall occur: (a) the Lessee shall fail to pay promptly any rental installment or any other amount due hereunder; (b) the Lessee shall fail to perform any of the agreements to be performed by Lessee as provided herein; (c) the Lessee shall become insolvent or any bankruptcy, reorganization insolvency, case or proceedings under any federal or state law, now or hereafter enacted shall be instituted by or against the Lessee; (d) the equipment is, in the sole opinion of Lessor, being used beyond its capacity or in any manner improperly cared for, abused or misused then in each such event the Lessor, at its option, may, without notice, retake possession of and remove said equipment without legal process. In the event of such repossession, the total unpaid rental for the entire rental period, plus any other unpaid rentals, shall become immediately due and payable by the Lessee together with the costs and expenses of such repossession, including the Lessor's reasonable attorney's fees and legal expenses, together with interest on all of the foregoing at the highest rate permitted by law. The above remedies shall not be deemed exclusive.
10. Waiver of any default herein is not a waiver of any other or subsequent default. The rights and remedies of the Lessor under this lease are cumulative and are not alternative. The rights and privileges of the Lessor under this lease shall insure to the benefit of its successors and assigns. All agreements of the Lessees contained herein are joint and several if more than one and shall bind the personal representatives, heirs, successors and assigns of the Lessee. Personal pronouns as used herein are intended to refer to corporations, partnerships, and other organizations.
11. Lessor shall retain title to said equipment at all times during the term of this agreement. The Lessee shall not permit any security interest in or any other lien on said equipment or permit anything to be done to impair the title of the Lessor. Lessee agrees not to remove or permit to be removed any serial number, model, name or other indication showing ownership.
12. For the sole purpose of resolving any problem of conflict of laws with respect to filing or recording hereof, it is declared and agreed that this lease shall be deemed to be effective when the equipment is delivered at the address specified above and that questions of filing or recording shall be determined by the law of such place. Lessee agrees to execute any instrument necessary for filing or recording this agreement upon request from Lessor. Lessee authorizes Lessor or its assigns to file a financing statement signed only by Lessor or its assigns in all places where necessary to perfect Lessor's security interest in the equipment in all jurisdictions whenever such filing is permitted by law. Lessor is hereby authorized at Lessor's option to insert herein the serial numbers of the equipment and other identifying marks or similar information.
13. Any alterations or modifications with respect to the equipment that may at any time during the initial term of this lease or any renewal term, be required to comply with any applicable law or any governmental rule or regulation shall be at the expense of the Lessee.
14. Any notice required to be given by Lessee or Lessor hereunder shall be deemed adequately given if sent by registered or certified mail to the other party at address stated herein, or at such other place the parties may designate
15. No variation or modification of this lease and no waiver of any of its provisions of conditions shall be valid unless in writing and signed by Lessor and Lessee.
16. At all times during normal business hours, Lessor shall have the right to inspect the equipment or observe its use and shall have the right to enter the premises where the equipment may be located for such purpose. Lessee shall immediately notify Lessor of any accident, personal injury or property damage connected with the equipment or its use including the time, place and nature of the accident and the extent of the damage to the equipment and in the event of any such accident, personal injury or property damage. Lessee agrees to cooperate with Lessor and any insurer of the equipment.
17. Upon the expiration or termination of this Agreement, Lessee, at Lessee's sole expense, shall remove, crate and return the equipment in proper manner, freight and insurance prepaid, unencumbered to Lessor at the place where the rent is paid, or to such other place as Lessor may designate. Any use of the equipment by Lessee beyond the term of this lease shall at the option of Lessor be deemed to be an extension of this lease on a month-to-month basis only, and all obligations of Lessee hereunder shall continue during such holding over. During any such holding over, Lessor may terminate such lease and take possession of the equipment upon demand after ten (10) days written notice to Lessee.
18. Lessee shall pay Lessor all costs and expenses, including attorney's fees, incurred by Lessor in exercising any of its rights or remedies hereunder, whether or not suit is commenced.
19. Lessee will, at its expense, promptly and duly execute and deliver to Lessor such further documents and assurances and take such further action as lessor may from time to time request in order to more definitively effect the intent and purpose of this lease and to establish and protect the rights, interest, and remedies intended to be created in favor of Lessor hereunder.
20. Lessee acknowledges that the equipment is stock in trade of Lessor and available for resale by Lessor to a third party at any time during the term of this agreement. Therefore, Lessee agrees that upon notice from Lessor that the equipment has been sold, Lessee shall immediately surrender to Lessor the equipment and accept from Lessor, as a substitute, a comparable or superior piece of equipment. With respect to such substituted equipment this agreement shall continue in full force and effect
21. This lease, constitutes the final, complete and exclusive agreement between the parties. Lessor shall not be bound by any agreement or representation relating in any manner to this transaction, which is not contained in this contract.
22. This lease shall be governed by and construed under the laws of The State of Lessor's place of business from which the equipment was delivered.

[redacted]